200 N.J. Super. 6 (1985)
490 A.2d 316
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SANDRA ABRIL BURGOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 1985.
Decided March 12, 1985.
*8 Before Judges McELROY, DREIER and SHEBELL.
Joseph H. Rodriguez, Public Defender, attorney for appellant (George Tosi, designated counsel, of counsel and on the brief).
George L. Schneider, Essex County Prosecutor, attorney for respondent (Elizabeth A. Duelly, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*9 Defendant Sandra Abril Burgos was indicted with Jose Antonio Rodriguez in a six count indictment which charged conspiracy to commit murder (N.J.S.A. 2C:5-2 and 2C:11-3), conspiracy to commit robbery (N.J.S.A. 2C:5-2 and 2C:15-1), murder (N.J.S.A. 2C:11-3), robbery (N.J.S.A. 2C:15-1), unlawful possession of a sawed-off shotgun (N.J.S.A. 2C:39-3b), and possession of the weapon for the purpose of using it unlawfully against another (N.J.S.A. 2C:39-4a). Rodriguez entered into a plea bargain wherein he pled guilty to murder, conspiracy to commit robbery, robbery and possession of a weapon for an unlawful purpose, and agreed to testify against defendant. Under the agreement he was to receive a maximum of 30 years with 10 years of parole ineligibility. Defendant Burgos was tried by a jury and convicted of all charges except conspiracy to commit murder, upon which the jury was hung. The trial judge merged the conspiracy to rob into the robbery, which was merged into the murder. Defendant was sentenced to 30 years with 15 years of parole ineligibility for the murder and to concurrent terms of four years for unlawful possession of a weapon and seven years with three and a half years of parole ineligibility for possession of a weapon for an unlawful purpose; both to be served concurrently with the murder sentence.
Defendant appeals alleging the following:
Point I  The trial court committed reversible error by allowing into evidence the prior statement of Jose Abril.
Point II  The trial court improperly delved into mental process of jury after it was apparent they could not reach a verdict as to the conspiracy and murder counts in indictment.
Point III  An alleged oral statement of the defendant, and certain items of an alleged consent search were improperly allowed into evidence.
The victim Numberto Burgos Soto, the husband of defendant Sandra Burgos, died of a gunshot wound. He was found lying face down in a hallway, the apparent victim of a robbery. Rodriguez testified he was passing defendant's apartment when she called him and inquired whether he needed money. She told him to come upstairs and gave him a pump sawed-off *10 shotgun and said they "had to rip [somebody] off." They went together in a car belonging to defendant's brother and waited until defendant identified the victim as he came out of a building. Rodriguez forced the victim into the building and told him to give up his wallet. The gun went off and Rodriguez ran to the car. He was seen by a witness who was able to identify the vehicle, give a partial license plate number and his description. Defendant allegedly gave Rodriguez the wallet and shotgun and told him to "get rid of it." He threw the wallet in a sewer and took the shotgun home. Both were later found. The car was traced to Jose Abril, defendant's brother, who was taken to police headquarters where he gave a written signed statement under oath. Defendant's sister-in-law, Doreen Abril, told police defendant showed her a shotgun two weeks before the incident and said she had "bullets" for it and that she would get even with Numberto.

I
Defendant maintains the statement of Jose Abril was improperly allowed into evidence. The trial judge ruled this evidence admissible under Evid.R. 63(1)(a). Abril testified at trial that he could not remember anything with respect to the contents of the statement offered by the prosecution although he remembered the police coming to his house, pointing guns at him and accusing him. He acknowledged his signatures on the statement but maintained he could not remember what happened at police headquarters and that he did not remember saying anything.
The trial court conducted an Evid.R. 8 hearing as to Abril's qualifications to be a witness and found him qualified. Abril's psychiatrist testified he was suffering from "paranoia schizophrenic subchronic" and that he was "not capable to testify because he had the tendency to make distortion of the question and misinterpret of the questions and he is very angry, very angry, in a very bad mood, and extremely difficult *11 to deal with." Nevertheless, the trial court's decision on Abril's competency is clearly supported by the record. See State in the Interest of R.R., 79 N.J. 97, 113 (1979).
The parts of Abril's statement read to the jury included his assertions that defendant told him of her husband's death and that she previously stated she was going to kill her husband, she would get even with him because he had smacked her, was going to get people to kill him, that Abril had seen her with Jose Rodriguez, that defendant said Numberto was shot in the chest and that she kept a shotgun in her bed. The statement also asserted defendant had the keys to Abril's car on the morning in question and that the car was hot when he got into it. Abril testified, however, that defendant did not tell him about Numberto's death and he only found out about it through the police officers. He said he noticed nothing about his car engine. He claimed he could not remember speaking with anyone at police headquarters, despite his acknowledgement that his signature appeared on each page of a statement given to the police.
Evid.R. 63(1)(a) provides:
A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:
(a) Is inconsistent with his testimony at the hearing and is offered in compliance with the requirements of Rule 22(a) and (b); however, when the statement is offered by the party calling the witness it shall be admissible only if, in addition to the foregoing requirements, it (i) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its reliability or (ii) was given under oath subject to the penalty of perjury at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition.... [(emphasis ours)]
We are satisfied that Abril's testimony at trial was sufficiently inconsistent with the contents of his statement to satisfy the requirements of the Rule. E. Cleary McCormick on Evidence, § 251 at 746-47 (1984); Annotation, "Denial of Recollection as Inconsistent with Prior Statement So As to Render Statement Admissible," 99 A.L.R.3d 934 (1980 & Supp. 1984); United States v. Rogers, 549 F.2d 490, 495-96 (8th Cir.1976), cert. den. 431 U.S. *12 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977); Chisum v. State, 273 Ark. 1, 6-8, 616 S.W.2d 728, 731-32 (Ark. 1981); State v. Lenarchick, 74 Wis.2d 425, 434-36, 247 N.W.2d 80, 86-87 (Wis. 1976). We find no merit to defendant's position that there is a question as to whether or not Jose gave "testimony" within the meaning of the Evidence Rule. State v. Williams, 182 N.J. Super. 427, 432 (App.Div. 1982).
Defendant also contends she was denied the right of confrontation as guaranteed by the Sixth Amendment of the United States Constitution because of Abril's lack of memory. This question was expressly reserved by the United States Supreme Court in California v. Green, 399 U.S. 149, 168-69, 90 S.Ct. 1930, 1940-41, 26 L.Ed.2d 489, 503 (1970). We note there was virtually no attempt by defense counsel to cross-examine Abril with respect to the events related in the statement. The witness was available for confrontation in the constitutional sense. This was not an attempt by the State to the use Abril's statement as a means of depriving defendant of her right to question the witness. We find no abridgement of defendant's right to confrontation as both the person making the statement and the person who recorded the statement were available for cross-examination. See State v. Lenarchick, 74 Wis.2d 425, 442-44, 247 N.W.2d 80, 90-91 (Wis. 1976); United States v. Insana, 423 F.2d 1165, 1168 (2d Cir.1970), cert. den. 400 U.S. 841, 27 L.Ed.2d 76, 91 S.Ct. 83 (1970). There is less basis for such assertion here where the witness has been declared competent and is available for cross-examination than in those cases where dying declarations are admitted in evidence. Evid.R. 63(5). Certain hearsay statements are allowed in evidence where there is a high probability of reliability and truthfulness despite the fact that only the party testifying to the statement may be available for cross-examination. We find no error in the trial court's permitting the statements to be placed before the jury.

*13 II
Defendant's contention that the court improperly delved into the mental process of the jury after it was apparent that they could not reach a verdict as to the conspiracy and murder counts is without merit. The colloquy complained of came about after a juror responded "felony" to a request for her verdict on the murder count. The colloquy complained of is as follows:
THE COURT: All right. Would you ask if they have reached a verdict on felony murder.
THE CLERK: Mr. Foreman, as to count three of the indictment charging the defendant with felony murder, have you agreed upon a verdict?
THE FOREMAN: Excuse me 
THE CLERK: Did you consider felony murder?
THE COURT: Have you reached a verdict on felony murder?
THE FOREMAN: I don't recall that count, which count was this?
THE COURT: As part of count three, murder, I take it you have not.
MR. CASTEEL: No, we haven't.
Prior to the court's inquiry the jury had reached verdicts with respect to defendant's guilt on the charges of conspiracy to rob, robbery, murder and the weapons charges. During the polling a juror indicated she did not agree to a guilty verdict on the charge of conspiracy to commit murder. Concern was expressed that there might appear to be an inconsistency in the murder verdict because of the jury's inability to agree on the conspiracy to commit murder charge. The court polled the jury on the issue of whether it found a purposeful and knowing murder or a felony murder. It appeared from the colloquy set forth above that the jury had not considered felony murder. The poll showed the jurors did not agree as to which theory of murder defendant was guilty. The dissenting juror stated "felony" when asked whether she agreed to the guilty verdict on the murder charge and indicated she did not agree with the verdict of purposeful and knowing murder. The court on the recharge advised the jury that it did not matter if they differed on the theory of murder as long as they agreed the defendant was guilty of murder. Defendant did not object and has not *14 complained on appeal about this portion of the instruction. We find no evidence that the court's inquiry and recharge had the capacity to produce an unjust result. R. 2:10-2.

III
The trial court's findings on the voluntariness of defendant's oral statements and her consent to search her apartment are amply supported by sufficient credible evidence present in the record. State v. Johnson, 42 N.J. 146, 162 (1964). We find no basis for reversing the court's decision on these issues.
We affirm the judgment of conviction.